UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YENCY ELIZABETH PALENCIA, and LILIANA RAMIREZ MORENO, <br><br> Petitioner, <br><br> v. <br><br> LAURA HERMOSILLO, et al., <br><br> Respondent. | CASE NO. 2:25-cv-02669-BAT <br><br> **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS IN PART AND DIRECTING ADDITIONAL BRIEFING** |

Petitioners Yency Elizabeth Palencia and Liliana Ramirez Moreno have filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 and the Administrative Procedure Act ("APA") seeking, in part, release from custody. Dkt. 1. At the time the petition was filed Petitioners were both detained by United States ("U.S.") Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.* Petitioner Palencia was subsequently released from ICE custody on December 31, 2025. Dkt. 7. Petitioner Ramirez Moreno remains detained. *Id.*

Petitioners assert claims for violation of their Fifth Amendment right to Due Process and the APA. Dkt. 1.

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART AND
DIRECTING ADDITIONAL BRIEFING - 1

The Government has filed a return memorandum. Dkt.7. Petitioner has filed a response/traverse. Dkt. 10.

For the reasons below, the Court, having considered the parties' submissions and the governing law, **ORDERS** as follows:

The Court **GRANTS** the petition with respect to Petitioners' Fifth Amendment Due Process Claim. Petitioner Ramirez Moreno shall be released immediately. Both Petitioner Ramirez Moreno and Petitioner Palencia shall not be re-detained pending final adjudication of their U visa petition absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that they are not a flight risk or danger to the community and that no alternatives to detention would mitigate those risks. Within twenty-four (24) hours of this order, Respondents shall provide the Court with a declaration confirming that Petitioner Ramirez Moreno has been released from custody and informing the Court of the date and time of her release. Upon Petitioners' release, Respondents must return to Petitioners any personal property, including personal identification documents and employment authorization documents.

With respect to the remaining claims:

(1) On or before January 23, 2026, Petitioner Ramirez Moreno and Petitioner Palencia are directed to submit a supplemental brief regarding Petitioners' APA claim, including whether Petitioners' re-detention constitutes a final agency action for purposes of judicial review. On or before January 30, 2026, Respondents may file a response to the supplemental brief.

## BACKGROUND

**A.     Petitioner Yency Elizabeth Palencia**

Petitioner Yency Elizabeth Palencia is a native and citizen of El Salvador. Dkt. 8 at ¶ 12 (Declaration of Deportation Officer Benjamin ("Benjamin Decl.")). Ms. Palencia represents in her petition, and Respondents do not dispute, that she entered the United States around October 2015 and was apprehended at that time and placed in removal proceedings. Dkt. 1 at 6-7. She represents she applied for asylum, her application was denied, and a final order of removal was entered on November 3, 2017. *Id.*

Ms. Palencia represents in her petition, and Respondents do not dispute, that she was subsequently granted a stay of removal on February 6, 2018, allowing her to remain in the country while she applied for a U visa, based on her eligibility for U visa relief as the parent of a child who was the victim of qualifying criminal activity as enumerated under U.S.C. § 1101(a)(15)(U)(iii). *Id.*

Ms. Palencia was released on an order of supervision ("OSUP") and required to enroll in the Alternatives to Detention ("ATD") program.[1] Dkt. 2-2, 2-3.

Ms. Palencia submitted her U visa application on March 2, 2018. Dkt. 1 at 7. Ms. Palencia represents, and Respondents do not appear to dispute, that on July 19, 2019, she was granted deferred action, signifying that United States Citizenship and Immigration Services ("USCIS") determined her to be eligible and placed her on the waiting list for the U visa, which has an annual numerical cap. *Id.* She was granted employment authorization valid from April 15, 2024, to April 14, 2028. Dkt. 2-2 (employment authorization card).

Ms. Palencia represents, and Respondents do not appear to dispute, that on December 18,

---

[1] The Court notes that the order of supervision refers to this program as the ATD while Petitioners refer to this program in the petition as the Intensive Supervision Appearance Program ("ISAP"). Dkt. 1. Regardless, the parties appear to agree that Petitioners were required to enroll in an ICE program that uses case management and monitoring technology to ensure compliance with immigration orders.

2025, she appeared for a routine check-in pursuant to the OSUP, where she was detained and transferred to ICE custody in Tukwila, Washington, and then transferred to the NWIPC in Tacoma, Washington. Dkt. 1 at 7.

Ms. Palencia was released from ICE custody on December 31, 2025, on another Order of Supervised Release. Dkt. 8 at ¶¶ 13-14 (Benjamin. Decl.).

**B.    Petitioner Liliana Ramirez Moreno**

Petitioner Liliana Ramirez Moreno is a citizen of Honduras. Dkt. 8 at ¶ 4 (Benjamin Decl.). She was previously removed from the United States on July 27, 2023. *Id.*; Dkt. 9 Declaration of Jordan Steveson ("Steveson Decl."), Exh. A. On October 23, 2023, Ms. Ramirez Moreno re-entered the United States and was apprehended by United States Customs and Border Protection. Dkt. 8 at ¶ 5 (Benjamin Decl.). Her prior order of removal was reinstated pursuant to Section 241(a)(5)[2] of the Immigration and Nationality Act ("INA"). *Id.* Ms. Ramirez Moreno claimed a fear of returning to Honduras. *Id.*

On October 27, 2023, Ms. Ramirez Moreno was released on an Order of Supervision ("OSUP") due, according to Respondents, to humanitarian and overcrowding issues. *Id.* at ¶ 6; Dkt. 9-2 (Order of Supervision). The OSUP stated that Ms. Ramirez Moreno was placed on the OSUP with a condition that she appear in person when requested "for identification and for deportation or removal." *Id.*

On January 22, 2024, Ms. Ramirez Moreno filed a U visa application on behalf of herself

---

[2] INA 241(a)(5) is codified at 8 U.S.C. § 1231(a)(5) and provides:

> Reinstatement of removal orders against aliens illegally reentering
> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART AND
DIRECTING ADDITIONAL BRIEFING - 4

and her two oldest children and was granted deferred action following a bona fide determination ("BFD") by USCIS. Dkt. 8 at ¶ 7 (Benjamin Decl.); Dkt. 1 at 8. She was also granted employment authorization valid from September 18, 2025, to September 17, 2029. Dkt. 2-4 (employment authorization card).

On December 18, 2025, when Ms. Ramirez Moreno reported for an appearance as required under the OSUP, ICE detained her for removal to Honduras. Dkt. 8 at ¶ 8 (Benjamin Decl.); Dkt. 1 at 8. Based upon her previous claim of fear of return to Honduras when apprehended in 2023, ICE has referred Ms. Ramirez Moreno for a reasonable fear interview. *Id.* at ¶ 10.

On January 5, 2026, USCIS issued a Notice of Intent to Deny Ms. Ramirez Moreno's application for U visa. *Id.* at ¶ 9. She has until February 9, 2026, to respond. *Id.* On that same date, USCIS issued a Notice of Intent to Deny Ms. Ramirez Moreno's Application for Advance Permission to Enter as Nonimmigrant. Dkt. 9-3 (Notice of Intent to Deny). She also has until February 9, 2026, to respond. *Id.*

**C.     The Petition**

Petitioners assert claims for violation of their Fifth Amendment right to Due Process and the APA based upon their re-detention without prior notice and a hearing despite their prior release and grant of deferred action status and employment authorization pending decision on their U visa applications. Dkt. 1.

As relief Petitioners request the Court:

(1) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioners from custody immediately and permanently enjoining their re-detention pending final adjudication of their U visa petitions absent written notice and a hearing prior to re-

    detention where Respondents must prove by clear and convincing evidence that each Petitioner is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks.

  (2) Order that upon Petitioners' release, Respondents must return to Petitioners any personal property, including personal identification documents and employment authorization documents.

  (3) Declare that the re-detention of Petitioners while their U visa petitions are pending final adjudication violates the INA, the implementing regulations, and the Due Process Clause of the Fifth Amendment.

  (4) Award Petitioners attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law.

Dkt. 1 at 16-17.

## DISCUSSION

**A. Habeas Corpus Legal Standard**

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody ...." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 302 (2001)).

**B. Jurisdiction**

1    Respondents contend the Court lacks jurisdiction to consider the petition under 8 U.S.C.
2 § 1252(g) because the claims arise out of Respondents' decision to execute a removal order. Dkt.
3 7. Petitioners argue that the Court has jurisdiction as Petitioners' claims are not challenging the
4 execution of a removal order but are challenging their unlawful re-detention without notice or a
5 pre-deprivation hearing. Dkt. 10.

6    Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim
7 by or on behalf of any alien arising from the decision or action by the Attorney General to
8 commence proceedings, adjudicate cases, or execute removal orders against any alien under this
9 chapter." 8 U.S.C. § 1252(g). The Supreme Court has interpreted Section 1252(g)'s jurisdiction-
10 stripping provisions narrowly, limiting its application to only "three discrete actions": the "
11 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.' "
12 *Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482 (1999) (quoting 8
13 U.S.C. § 1252(g) (emphasis in original). The Supreme Court rejected a reading of the statute that
14 would cover "the universe of deportation claims," *id*., and has also cautioned against interpreting
15 the statute to "sweep in any claim that can technically be said to 'arise from' " these three
16 actions, *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).

17    In two recent immigration habeas corpus decisions in this district, the courts have found
18 jurisdiction to be proper over petitions filed under circumstances nearly identical to those
19 presented here. *See Gama v. Bondi*, No. 2:25-CV-01925-TL, 2025 WL 3559942, at *1 (W.D.
20 Wash. Dec. 12, 2025); *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 908 (W.D. Wash. July
21 24, 2025). In *Sepulveda Ayala* and *Aguilar Gama*, as here, the habeas petitioners were granted
22 deferred action and employment authorization by USCIS through the U visa process, but were

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART AND
DIRECTING ADDITIONAL BRIEFING - 7

either re-detained, or were never released, so that the Government could continuing to pursue their removal. *Id.*

The courts in both *Sepulveda Ayala* and *Aguilar Gama* concluded that "the proper jurisdictional analysis under Section 1252(g) focuses on the government action or decision that gives rise to the plaintiff's claims, not whether the plaintiff's claims might affect or preclude removal." *Sepulveda Ayala*, 794 F. Supp. 3d at 908; *Gama*, 2025 WL 3559942, at *2-3. Citing the Ninth Circuit decision in *Arce v. United States*, 899 F.3d 796 (9th Circ. 2018)[3], and the Sixth Circuit decision in *Enriquez-Perdomo v. Newman*, 54 F.4th 855 (6th Cir. 2022)[4], the courts concluded that "petitioners' claims did not "'arise from' ICE's decision to execute [petitioner's] removal order" for purposes of Section 1252(g). *Sepulveda Ayala*, 794 F. Supp. 3d at 908; *accord Gama*, 2025 WL 3559942, at *2-3. "Rather [petitioner's] claims arise from the Government's decision to grant him deferred action combined with ICE's subsequent refusal to honor that grant." *Sepulveda Ayala*, 794 F. Supp. 3d at 908; *accord Gama*, 2025 WL 3559942, at *2-3. Accordingly, the courts found that Section 1252(g) did not strip the Court of jurisdiction. *Id.* The Court finds the reasoning and analysis of these cases persuasive.

Furthermore, Petitioners challenge here is to their unlawful re-detention without notice or a pre-deprivation hearing, not to the removal order itself.

---

[3] In *Arce*, plaintiff was wrongfully removed to Mexico in violation of an order for temporary stay of removal. 899 F.3d 796, 799. The Court found that plaintiff's subsequent Federal Tort Claims Act claim was barred by Section 1252(g) because the claim did not arise "from the execution of the removal order, but from the violation of our court's order." *Id.* at 800.

[4] In *Enriquez-Perdomo*, ICE arrested the petitioner who had been granted status under Deferred Action for Childhood Arrivals ("DACA"). 54 F.4th 855. The Court found Section 1252(g) did not bar jurisdiction because "we read 'removal orders [in Section 1252(g)] as referring to executable removal orders'" and that petitioner's removal order was not subject to execution because she had DACA status at the time of arrest and detention. *Id.* at 863.

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART AND
DIRECTING ADDITIONAL BRIEFING - 8

1       Accordingly, Section 1252(g) does not strip the Court of jurisdiction. The Court retains

2  jurisdiction to decide the petition.

3  **C.      Mootness – Petitioner Palencia**

4       The parties agree Ms. Palencia was released from detention on another OSUP order on

5  December 31, 2025. Respondents argue that the petition is moot with respect to Ms. Palencia

6  because she has been released. Dkt. 7. Petitioners argue, in their traverse, that the petition is not

7  moot with respect to Ms. Palencia because they still seek to enjoin her "re-detention pending

8  final adjudication of [her] U visa petitions absent written notice and a hearing prior to re-

9  detention where Respondents must prove by clear and convincing evidence that [] Petitioner is a

10 flight risk or danger to the community and that no alternatives to detention would mitigate those

11 risks." They also argue Ms. Palencia's release does not moot the request for a declaratory ruling

12 "that the re-detention of Petitioners while their U visa petitions are pending final adjudication

13 violates the INA, the implementing regulations, and the Due Process Clause of the Fifth

14 Amendment." Dkt. 10.

15      The Court agrees that Ms. Palencia's claims are moot with respect to her request for

16 release. But the Court finds Ms. Palencia's claims are not moot with respect to her request to

17 enjoin her "re-detention pending final adjudication of [her] U visa petitions absent written notice

18 and a hearing prior to re-detention where Respondents must prove by clear and convincing

19 evidence that [] Petitioner is a flight risk or danger to the community and that no alternatives to

20 detention would mitigate those risks" and her request for a declaratory ruling "that the re-

21 detention of Petitioners while their U visa petitions are pending final adjudication violates the

22 INA, the implementing regulations, and the Due Process Clause of the Fifth Amendment." *See*

23 *Ortiz Martinez v. Wamsley*, No. 2:25-CV-01822-TMC, 2025 WL 2899116, at *4 (W.D. Wash.

Oct. 10, 2025) (habeas petition not moot where released "Petitioners 'face[d] the threat of re-arrest and mandatory detention' under the same detention scheme this Court has already declared unlawful as applied to them"); *Abdala v. I.N.S.,* 488 F.3d 1061, 1064 (9th Cir. 2007) (a habeas petition "continue[s] to present a live controversy after the petitioner's release" where there is "some remaining 'collateral consequence' that may be redressed by success on the petition.") (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)); *Quiva Palacio v. Hermosillo*, No. C25-1983-RSM-MLP, Dkt. 14 at 3 (W.D. Wash. Dec. 22, 2025) ("the Supreme Court has held that release does not moot a habeas petition because the 'in custody' requirement must be satisfied only at the time of filing.") (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).

D.  **Petitioners' Claims**

Petitioners contend their re-detention without prior notice and a hearing despite their prior release and grant of deferred action status and employment authorization pending decision on their U visa application violates their Fifth Amendment right to Due Process and the APA. Dkt. 1.

1.  **Bona Fide U Visa Determination Process**

The Court in *B.D.A.A. v. Bostock*, No. 6:25-CV-02062-AA, 2025 WL 3484912, at *5 (D. Or. Dec. 4, 2025) recently outlined the U visa determination process as follows:

> U visas provide a path to legal status for non-citizen victims of certain serious crimes who have "suffered substantial physical or mental abuse," who "possess[ ] information concerning [that] criminal activity," and who have helped law enforcement investigate or prosecute those crimes. 8 U.S.C. § 1101(a)(15)(U) (providing eligibility criteria); 8 C.F.R. § 214.14. Congress created the U-visa program in 2000 to encourage crime victims to report crimes and assist law enforcement without fear of removal. *Sepulveda Ayala v. Noem*, No. 3:25-CV-5185-JNW, 2025 WL 1616075, at *1 (W.D. Wash. June 5, 2025). U-visa applicants must show either that they are admissible into the United States or that any ground for inadmissibility has been waived, 8 C.F.R. §§ 214.1(a)(3)(i), 214.14(c)(2)(iv). "Once issued a U visa, the petitioner receives lawful nonimmigrant status and work authorization for up to four years." *De Sousa v. Dir. of U.S. Citizenship & Immigr. Servs.*, 755 F. Supp. 3d 1266, 1268 (N.D. Cal. 2024) (citing 8 U.S.C. §§ 1184(p)(3)(B), (p)(6); 8 C.F.R. § 274a.12(a)(19)).

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART AND
DIRECTING ADDITIONAL BRIEFING - 10

There is a statutory cap of 10,000 U visas that may be issued each year, "a figure routinely exceeded by the number of petitions filed." *Patel v. Noem*, 788 F. Supp. 3d 950, 953 (N.D. Ill. 2025) (citing 8 U.S.C. § 1184(p)(2)(A)). Eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status are placed on a waitlist. *Id.* (citing 8 C.F.R § 214.14(d)(2)). "The wait time for issuance of a U visa is at least seven or eight years." *De Sousa*, 755 F. Supp. 3d at 1268.

"USCIS places petitioners who qualify for a U visa but who cannot obtain one due to the statutory cap on a waiting list, where they receive interim benefits[,] includ[ing] deferred action, which protects them against removal from the United States, as well as employment authorization." *Id.* "Priority on the waiting list [is] determined by the date the petition was filed with the oldest petitions receiving the highest priority." 8 C.F.R. § 214(d)(2).

In 2021, USCIS implemented the Bona Fide Determination ("BFD") process, to contend with "drastic increases in the volume of U nonimmigrants petitions and a growing backlog awaiting placement on the waiting list or final adjudication." *Kothari v. Dir. of United States Citizenship & Immigr. Servs.*, No. 3:24 C 50101, 2025 WL 732075, at *3 (N.D. Ill. Jan. 24, 2025) (quoting U.S. Citizenship & Immigr. Servs., *Policy Alert* (June 14, 2021)). Under the BFD process, USCIS first considers whether an application was made in "good faith; without fraud or deceit," and then whether the applicant "poses a risk to national security or public safety [or] otherwise merits a favorable exercise of discretion." *Id.* (quoting USCIS *Policy Alert*). When the applicant overcomes the second hurdle, that applicant is issued an employment authorization document and is granted deferred action. *Id.*

### 2. Due Process

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333, 96 S.Ct. 893 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). Determining whether a

particular administrative procedure provides the process constitutionally due "generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335, 96 S.Ct. 893; *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320–21 (W.D. Wash. 2025).

The Ninth Circuit in *Rodriguez Diaz v. Garland* assumed without deciding that the *Mathews* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). And district courts have subsequently applied the *Mathews* test in similar circumstances. *See B.D.A.A.*, 2025 WL 3484912; *E.A. T.-B.*, 795 F. Supp. 3d at 1320–21, FN 4. Accordingly, the Court will consider each *Mathews* factor in turn to determine whether Petitioners' re-detention comports with constitutional due process requirements.

1) Private Interest

Under the first *Mathews* factor, the Court determines the private interest that will be affected by the official action. Petitioners' interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992); *see also Zadvydas*, 533 U.S. at 696, 121 S.Ct. 2491 (finding that a non-citizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). And "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART AND
DIRECTING ADDITIONAL BRIEFING - 12

*Doe v. Becerra*, 787 F.Supp.3d 1083, 1093, No. 2:25-cv-00647-DJC-DMC, (E.D. Cal. Mar. 3, 2025); *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *E.A. T.-B.*, 795 F. Supp. 3d at 1320–21.

      Here, both Petitioners were initially released pursuant to an OSUP and subsequently re-detained when they appeared for routine check-ins with ICE. Furthermore, both Petitioners have been granted deferred action and employment authorization by USCIS through the U visa process. Respondents argue that deferred action does not stay removal but, rather, is "an exercise of prosecutorial discretion to make an alien a lower priority for removal from the United States[.]" Dkt. 7 at 10. Respondents also argue the OSUP order made clear the order of release was "temporary, discretionary, and [the petitioners] could be required to report for removal." *Id.*

      However, the Supreme Court in *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484, 119 S. Ct. 936, 944, 142 L. Ed. 2d 940 (1999) has defined deferred action to mean "no action will thereafter be taken to proceed against an apparently deportable alien even on grounds normally regarded as aggravated." The Court agrees with the reasoning of several recent district court decisions that "[t]his definition reflects the fundamental nature of deferred action, regardless of the specific program or context in which it is granted" and that "deferred action is an immigration benefit that prevents removal." *Ayala v. Bondi*, No. 2:25-cv-01063-JNW-TLF, 2025 WL 2209708, at *3 (W.D. Wash. Aug. 4, 2025); *B.D.A.A.*, 2025 WL 3484912, at *6. Thus, the Court finds Petitioners risk the loss of a significant liberty interest. Further, Petitioners, having been conferred deferred action and work authorization, risk the loss of a substantial property interest. *B.D.A.A.*, 2025 WL 3484912, at *6 ("Because a bona fide U visa determination

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART AND
DIRECTING ADDITIONAL BRIEFING - 13

confers deferred action and work authorization, Petitioners risks the loss of a substantial property interest." (citing *Sepulveda*, 794 F.Supp. 3d at 908)).

Thus, the Court should find the Constitution protects Petitioners' interest in their liberty and property by requiring Due Process if it is to be deprived.

2) Risk of Erroneous Deprivation

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest and the probable value, if any, of additional or substitute procedural safeguards.

The Government contends that Petitioner was not entitled to any additional process because deferred action does not stay removal, that Petitioners already had due process prior to the removal orders, and that the OSUP order made clear it was "temporary, discretionary, and [the petitioners] could be required to report for removal." Dkt. 7 at 10. But, as discussed above, the Court rejects this argument.

The parties do not dispute Petitioners were not provided any pre-deprivation notice or hearing prior to their re-detention, despite the fact their actions in re-detaining Petitioners for purposes of pursuing removal proceedings have effectively "nullified [their] work authorization and deferred status." *B.D.A.A.*, 2025 WL 3484912, at *6.

Furthermore, the regulations authorizing ICE to release a noncitizen from custody generally require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025). With respect to Petitioner Ramirez Moreno, who was the subject of a reinstated removal order, was subject to expedited removal, and was released for

"humanitarian" reasons[5], Dkt. 7 at 4, Dkt. 8 at ¶6 (Benjamin Decl.), the regulations authorizing ICE to release a noncitizen from custody for humanitarian reasons appear to require that the noncitizen may be released only if they "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b); *Pinchi*, 792 F. Supp. 3d at 1035, n.3. Petitioners' "[r]elease [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *Pinchi*, 792 F. Supp. 3d at1034.

Respondents do not argue that Petitioners violated the conditions of their OSUP, that they were notified in any way that their release was being revoked for any reason, or that there was any changed circumstance that made them a danger or a risk of flight. Nor do Respondents argue

---

[5] 8 C.F.R. § 235.3 (b) (iii) provides:
> Detention and parole of alien in expedited removal. An alien whose inadmissibility is being considered under this section or who has been ordered removed pursuant to this section shall be detained pending determination and removal. Parole of such alien shall only be considered in accordance with section 212(d)(5) of the Act and § 212.5(b) of this chapter.

8 C.F.R. § 235.3(c) provides:
> Arriving aliens placed in proceedings under section 240 of the Act or aliens referred for an asylum merits interview under § 208.2(a)(1)(ii) of this chapter.
> (1) Except as otherwise provided in this chapter, any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section 240 of the Act shall be detained in accordance with section 235(b) of the Act. Parole of such alien shall only be considered in accordance with § 212.5(b) of this chapter. This paragraph (c) shall also apply to any alien who arrived before April 1, 1997, and who was placed in exclusion proceedings.
> (2) Except as otherwise provided in this chapter, any alien over whom USCIS exercises jurisdiction pursuant to § 208.2(a)(1)(ii) of this chapter after being found to have a credible fear of persecution or torture shall be detained in accordance with section 235(b) of the Act. Parole of such alien shall only be considered in accordance with § 212.5(b) of this chapter.

8 C.F.R. § 212.5(b) provides:
> Parole from custody. The parole of aliens within the following groups who have been or are detained in accordance with § 235.3(b) or (c) of this chapter would generally be justified only on a case-by-case basis for "urgent humanitarian reasons" or "significant public benefit," provided the aliens present neither a security risk nor a risk of absconding[.]

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART AND
DIRECTING ADDITIONAL BRIEFING - 15

that Petitioners' deferred action status had been revoked and they do not dispute that Petitioners were re-detained without a hearing on the effect their lawful grant of deferred action has on their potential removal.

The Court notes even in circumstances where the Government might believe it has a valid reason to detain a petitioner, this does not eliminate its obligation to effectuate the detention in a manner that comports with due process. *See Guillermo M.R. v. Kaiser*, 791 F.Supp.3d 1021, 1037-38, No. 25-cv-05436-RFL, (N.D. Cal. July 17, 2025) (finding "undeniably stark" risk of erroneous deprivation where the Government contends that "notwithstanding a neutral arbiter's determination that petitioner should be released, ICE is entitled to unilaterally terminate the IJ's order by re-detaining petitioner without a hearing for at least six months, based on ICE's own determination in its sole discretion that additional conditions of release unilaterally set by ICE had been violated"); *E.A. T.-B.*, 795 F. Supp. 3d at 1320–21 (finding Due Process violation where petitioner was re-detained without notice or a hearing after he was previously released based on purported violations of the conditions of his release); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5517277, at *2 (N.D. Cal. Sep. 14, 2020) (noting that respondents' argument that petitioner is not entitled by statute or regulation to a pre-arrest hearing does not bear on whether a hearing is required for procedural due process).

Respondents note that on January 5, 2026, after the filing of this petition, USCIS issued a Notice of Intent to Deny Ms. Ramirez Moreno's application for U visa and a Notice of Intent to Deny Ms. Ramirez Moreno's Application for Advance Permission to Enter as Nonimmigrant. She has until February 9, 2026, to respond to both notices. But these notices merely confirm that Petitioner Ramirez Moreno has deferred action status, and that she has until February 9, 2026, to respond to the revocation notices. Accordingly, this does not affect the Court's analysis.

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART AND
DIRECTING ADDITIONAL BRIEFING - 16

Because the grant of deferred action affirmatively prevents Petitioners' removal while it remains unrevoked, because Petitioners were not given notice of the revocation of their release or the opportunity to raise arguments related to their deferred action status or any other challenges to the revocation of release, the Court should find the risk of erroneous deprivation of Petitioners' liberty and property interest in the absence of a pre-detention hearing is high. *See Nevarez Jurado v. Freden*, 2025 WL 3687264 (W.D.N.Y. Dec. 19, 2025) ("Because that grant of deferred action affirmatively prevents [petitioner's] removal while it remains unrevoked … and because it appears that [petitioner] has not received any opportunity to raise that argument, the second *Mathews* factor also weighs decisively in favor of concluding that his ongoing detention violates his due process rights.").

3)      Government's Interest

Under the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining petitioner without a pre-deprivation hearing.

Consistent with other courts in this district, this Court should find that "the Government's interest in re-detaining non-citizens previously released without a hearing is low." *E.A. T.-B.*, 2025 WL 2402130, at *5 (citing *Ortega*, 415 F. Supp. 3d at 970) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Even if the process may present *some* administrative burden, given the high risk of erroneous deprivation, the fundamental liberty and property interests at stake, and the fact that ICE previously found it appropriate to release Petitioners, the Court should find that providing effectively no pre-detention process—as was done here—is constitutionally deficient. *See Ledesma Gonzaelez v. Bostock,* 2025 WL 2841574 at *8 (W.D. Wash., Oct. 7, 2025)*; E.A. T.-B.*, 2025 WL 2402130, at *6 ("Although the Government notes

that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").

Based on this review of the *Mathews* factors, the Court finds that Respondents violated Petitioners' Fifth Amendment right to Due Process.

### E.    Administrative Procedure Act Claim

Petitioners Palencia and Ramirez Moreno also argue that Respondents' actions in detaining Petitioners for removal despite their deferred action status and employment authorization pending the final adjudication of their U visa applications, is arbitrary and capricious, an abuse of discretion, and not in accordance with the law. Dkts. 1, 10.

The Administrative Procedure Act ("APA") provides for judicial review of agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). While Petitioners' detention despite their deferred action status does appear to have been arbitrary and capricious, the Administrative Procedure Act generally permits only judicial review of final agency action. *Hamilton v. Gonzales*, 485 F.3d 564, 569 (10th Cir. 2007); 8 U.S.C. § 1252(a)(1). It is not clear to the Court that Petitioners' re-detention falls within the category of final agency action. *See, e.g., Gamez Lira v. Noem*, No. 1:25-CV-00855-WJ-KK, 2025 WL 2581710, at *4 (D.N.M. Sept. 5, 2025).

The Court finds it would benefit from additional briefing from both sides on the issue of Petitioners' APA claim, including whether Petitioners' re-detention constitutes a final agency action for purposes of judicial review.

Accordingly, on or before January 23, 2026, Petitioners are directed to submit a supplemental brief regarding Petitioners' APA claim, including whether Petitioners' re-detention constitutes a final agency action for purposes of judicial review. On or before January 30, 2026, Respondents may file a response to the supplemental brief.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS**:

The petition is **GRANTED** with respect to Petitioners' Fifth Amendment Due Process Claim. Petitioner Ramirez Moreno shall be released immediately. Both Petitioner Moreno and Petitioner Palencia shall not be re-detained pending final adjudication of their U visa petition absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that they are not a flight risk or danger to the community and that no alternatives to detention would mitigate those risks. Within twenty-four (24) hours of this order, Respondents shall provide the Court with a declaration confirming that Petitioner Ramirez Moreno has been released from custody and informing the Court of the date and time of her release. Upon Petitioners' release, Respondents must return to Petitioners any personal property, including personal identification documents and employment authorization documents.

With respect to the remaining claims the Court directs as follows:

(1) On or before **January 23, 2026**, Petitioners Ramirez Moreno and Palencia are directed to submit a supplemental brief regarding Petitioners' APA claim, including whether Petitioners' re-detention constitutes a final agency action for purposes of judicial review.

On or before **January 30, 2026**, Respondents may file a response to the supplemental brief.

The Clerk shall provide a copy of this order to counsel for both parties.

DATED this 16th day of January, 2026.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART AND
DIRECTING ADDITIONAL BRIEFING - 20